UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PNC BANK, NATIONAL          )
ASSOCIATION,               )
            Plaintiff,     )
                           )
vs.                        )          1:06-cv-755-LJM-TAB
                           )
OCMC, INC.,                )
            Defendant.     )

## ORDER ON INTERESTED PARTIES' MOTION FOR LEAVE TO FILE COMPLAINT AGAINST THE RECEIVER

Pending before the Court is a Motion for Leave to File Complaint Against the Receiver ("Motion for Leave") (Dkt. No. 215), filed by interested parties Joseph A. Pence ("Pence"), Brad Benge ("Benge"), Daniel Rohn ("Rohn"), Robert Treash ("Treash"), Graham Cohen ("Cohen"), and Spencer Zimmerman ("Zimmerman") (collectively, "the Interested Parties") against the receiver, Meridian Financial Advisors, Ltd. (the "Receiver"), individually and in its capacity as court-appointed receiver of assets for defendant, OCMC, Inc. ("OCMC"). Having considered the parties' arguments, for the following reasons, the Interested Parties' Motion for Leave (Dkt. No. 215) is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  ORGANIZATION OF OCMC

OCMC[1] is a Carmel, Indiana based telecommunications company specializing in long distance service resale.  Dkt. No. 216 at 5.  Interested parties are all former

---

[1]  OCMC formerly operated as One Call Communications, Inc. until 2002, when it was acquired by a consortium of investors, including Pence, Benge, and others.  Dkt. No. 216 at 5–6.  For clarity, the term "OCMC" as used in this Order refers to the current OCMC, Inc. and all of its previous incarnations.

employees of OCMC. *Id.* Pence joined OCMC in 1986 and served as CEO until his resignation following the Receiver's acquisition of control over OCMC in May of 2006. *Id.* at 5; Dkt. No. 231 at 6. Pence also owns a portion of OCMC as an equity shareholder. Dkt. No. 216 at 5–6.

One of OCMC's businesses involved the acquisition of "tapes" from other communication service providers known as "aggregators." *Id.* at 8. The tapes contained information on calls that the aggregators were unable to bill due to contractual restrictions. *Id.* OCMC would use the information on the tapes—including the location and time of each call—to generate bills to end users. *Id.* Not all of the calls on the tapes would generate payment. *Id.* For accounting purposes, the revenue from the tapes was recorded as accounts receivable on a "gross" basis. *Id.* at 9. This accounting method took the entire value of the calls on the tape into account as part of the accounts receivable, even though the entire value of the tape was unlikely to be collected. *Id.*

OCMC borrowed funds from PNC Bank, National Association ("PNC Bank") on a number of occasions. *Id.* at 6. The loan agreements with PNC Bank ("loan agreements") provided OCMC with a revolving line of credit secured by a lien on OCMC's accounts receivable. *Id.* The amount available for borrowing changed daily and monthly based on the calculation of a "borrowing base," which was calculated using a formula provided by PNC Bank and recorded on certificates sent by OCMC to PNC Bank. *Id.* The certificates also listed the total value of OCMC's accounts receivable, and the amount that should be recorded as accounts receivable on the tape business was a topic of debate between OCMC and PNC Bank. *Id.* at 9.

In March 2006, OCMC's board removed Chief Financial Officer Lester Li ("Li") for

cause and replaced him with interim CFO Jeff Good ("Mr. Good"). *Id.* at 10. At the time of Mr. Good's appointment, OCMC was still in compliance with its obligations to PNC Bank under the loan agreements. *Id.* Around this time, agents for OCMC were working to locate potential buyers for the company. *Id.* Although the details are disputed, all parties agree that in Spring of 2006, OCMC changed its accounting method from "gross" to "net," causing it to default on the loan agreements. *Id.* at 11.

### B. APPOINTMENT OF THE RECEIVER AND SUBSEQUENT LITIGATION

On May 11, 2006, PNC Bank filed suit in this Court against OCMC for its default on the loan agreements and requested a court-appointed receiver. Dkt. Nos. 1, 9. A hearing, which was attended by an OCMC representative, was held on PNC Bank's request. Dkt. No. 15 at ¶ 3. On May 12, 2006, this Court granted PNC Bank's motion to appoint the Receiver. *Id.* On October 27, 2006, the Court amended the appointment order on the Receiver's motion. Dkt. No. 73 ("Receivership Order"). As part of the Receivership Order, the Court concluded that OCMC was in default on its obligations under the loan agreements and was unable to pay its outstanding obligations as they came due. *Id.* at ¶¶ 2, 4.

The Receivership Order gave the Receiver the authority to take steps to liquidate OCMC for the benefit of OCMC's secured creditors, PNC Bank and CID Mezzanine Capital, L.P. ("CID"). *Id.* at ¶¶ 6, 9. Under the authority granted to it under the Receivership Order, the Receiver has engaged in a number of activities, including terminating OCMC's employees and accepting the resignations of OCMC's officers, filing suits against various employees and officers for breaches of fiduciary duties, and settling litigation involving

3

OCMC. Dkt. No. 231 at 3–6. This barrage of litigation includes suits by PNC Bank and the Receiver against the Interested Parties and others.[2] The Receiver also was involved in a suit filed by one of OCMC's former clients, Blue Frog Mobile NV Inc. ("Blue Frog"), alleging breach of contract against OCMC. *See Blue Frog Mobile NV Inc. v. Navicomm LLC*, No. 06-CV-1215 (S.D. Ind. filed Aug. 8, 2006) ("Blue Frog Litigation").

On April 12, 2007, PNC Bank filed for default judgment against OCMC because OCMC failed to respond to the original complaint. Dkt. No. 93. PNC Bank sought judgment for the full amount owed under the loan agreements. On September 7, 2007, the Court granted default judgment against OCMC for $21,682,022.60. Dkt. No. 124. The Receiver took no action to prevent entry of the default judgment.

## C. ALLEGED MISCONDUCT BY THE RECEIVER

During its term as receiver, the Interested Parties allege that the Receiver engaged in misconduct and mismanagement of OCMC and its assets. Dkt. No. 215-1 ("Proposed Complaint"). The Interested Parties contend that PNC Bank, through the Receiver's agent Maggie Good ("Ms. Good"), among others, wanted to get out of its loan relationship with OCMC and engaged in activities to force OCMC to default on its loan obligations, including encouraging the shift from the gross method of accounting to the net method. *Id.* at ¶¶ 41–42. They contend that the Receiver should have obtained the advice of those familiar with OCMC's industry to evaluate the company's assets properly, but it failed to do so. *Id.*

---

[2] *See PNC Bank, National Association v. ICOE, Ltd.*, No. 07-CV-992 (S.D. Ind. filed July 31, 2007); *Meridian Financial Advisors, Ltd. v. Pence*, No. 07-CV-995 (S.D. Ind. filed July 31, 2007); *PNC Bank, National Association v. Pence*, 08-CV-502 (S.D. Ind. filed May 18, 2008).

at ¶ 44.  The Interested Parties also contend that the Receiver mishandled OCMC's assets, including existing customer accounts and intellectual property rights, such that OCMC parted with these assets for far less value than they were worth.  *Id.* at ¶¶ 47–50.  They also allege that the Receiver pursued frivolous litigation against themselves and others to cover up its own misconduct and loss of receivership assets.  *Id.* at ¶ 52.

The Interested Parties also reiterate many alleged instances of discovery misconduct, which were previously brought to this Court's attention in related litigation.  *See* Dkt. No. 470, *Meridian Financial Group, Ltd. v. Pence*, No. 07-CV-995 (S.D. Ind. July 12, 2010), *available at* 2010 WL 2772840.  In particular, the Interested Parties contend that the Receiver concealed exculpatory evidence in the related fraud proceedings, made false statements to law enforcement personnel, obtained Pence's private emails in violation of wiretap laws, made secret agreements with Ann Bernard ("Bernard"), former OCMC legal counsel and defendant in the civil fraud case, to violate Pence's and Benge's attorney-client privilege, and intentionally mislabeled boxes of material documents to impede their discovery.  Proposed Complaint at ¶¶ 52–80.

The Interested Parties now seek leave to file a complaint against the Receiver.  Dkt. No. 215.  In particular, the Interested Parties allege that the Receiver is liable to them for a number of torts, including breach of fiduciary duties, negligence, defamation, negligent hiring of the Receiver's agents, abuse of process, and tortious interference with contract.  *Id.*  The Interested Parties also allege that the Receiver obtained the appointment wrongfully, is specially liable under the Indiana Crime Victim's Relief Act for deception, and is vicariously liable for the misconduct of its agents.  *Id.*  The Interested parties look to raise

similar claims against PNC Bank for aiding and abetting the Receiver's activities.[3]  *Id.*

Subsequent to filing the Motion for Leave, Interested Parties Benge, Rohn, Treash, Cohen, and Zimmerman entered into settlement agreements with the Receiver and PNC Bank.  Dkt. Nos. 250, 253, 258, 259, 260.  As such, they have agreed to withdraw their pending motions in this case.  *See id.*  Therefore, as to the claims of Benge, Rohn, Treash, Cohen, and Zimmerman, the Motion for Leave is **DENIED AS MOOT**.  Pence is the only remaining Interested Party still pursuing the Motion for Leave, so the Court's analysis will proceed on his claims only.  The Court adds additional facts below as needed.

## II.  STANDARD

The Receivership Order specifically requires leave of this Court to file an action against the Receiver.  Receivership Order at ¶ 28(a).  To obtain leave to file a complaint against a receiver, a movant must state a prima facie cause of action for each allegation in the complaint.  75 C. J. S. *Receivers* § 419 (2002).  The proposed complaint must plead facts demonstrating the presence of each of the elements of the claims at issue, establishing plaintiff's standing to bring the claims, and showing that the claims are ones that can be brought against a receiver as a matter of law.  *See* Fed. R. Civ. P. 12.  In evaluating a proposed complaint, a court does not look to the merits of the action; instead, it looks to whether, if proven, the facts provided by the plaintiff state "a reasonable probability of recovery."  75 C.J.S. *Receivers* § 418 (2002).

A court-appointed receiver "may be held liable in negligence when he has breached

---

[3]  All parties agree that the Interested Parties need not seek leave of the Court to file a complaint against PNC Bank.  Therefore, the Court considers the Motion for Leave only as applied to the Receiver.

a duty owed either to creditors or others with whom the receiver is in privity, or held liable for other misconduct in the administration of the receivership." *Lucas v. Riley Bennett Egloff, LLC*, No. 07-CV-534, 2010 WL 582203, *1 (S.D. Ind. Feb. 12, 2010) (McKinney, J.) (citing *Keybank Nat'l Ass'n v. Shipley*, 846 N.E.2d 290, 295–96 (Ind. Ct. App. 2006)). In *Shipley*, the Indiana Court of Appeals cited with approval the outlines of receiver liability set forth in CORPUS JURIS SECUNDUM and in AMERICAN JURISPRUDENCE, SECOND EDITION. *Shipley*, 846 N.E.2d at 296 (citing 75 C.J.S. *Receivers* § 192 (2002); 65 AM. JUR. 2D *Receivers* § 298 (2001)). According to CORPUS JURIS SECUNDUM, a "receiver who acts outside his statutory authority or orders of the appointing court, or who is guilty of negligence or misconduct in the administration of the receivership, is personally liable for any loss resulting therefrom." 75 C.J.S. *Receivers* § 192 (2002). Therefore, the only claims that may be brought against a receiver are those alleging actions outside the scope of the receiver's authority or misconduct in the performance of receivership duties.

## III.  DISCUSSION

### A.  PRELIMINARY ISSUES

#### 1. COMPULSORY COUNTERCLAIMS IN OTHER LITIGATION

The Receiver contends that the claims Pence seeks to bring in this action are more properly brought as compulsory counterclaims in other related litigation. *See, e.g.*, Dkt. No. 231 at 16. Pence is the subject of another suit filed by the Receiver on behalf of OCMC for breach of fiduciary duties. *See Meridian Financial Advisors, Ltd. v. Pence*, No. 07-CV-995 (S.D. Ind. filed July 31, 2007). The Receiver asserts that the claims at issue in the

Motion for Leave are in fact compulsory counterclaims in that litigation.

Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Compulsory counterclaims must be brought in the same case as the initial claims. *Id.* Whether a claim is part of the same transaction or occurrence is determined by the logical relationship test, in which a court should consider "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). All other counterclaims are permissive and need not be brought in the same case. *See* Fed. R. Civ. P. 13(b).

In this case, the Court concludes that the claims in Pence's Proposed Complaint are permissive, rather than compulsory, counterclaims. Pence's claims, for the most part, challenge actions of the Receiver following entry of the Receivership Order. The claims present an entirely different sequence of events leading to a potential right to recovery than the Receiver's claims against Pence. Pence's alleged breaches of fiduciary duty occurred prior to the establishment of the receivership and involve his conduct while still serving as an officer and director of OCMC. In contrast, the Receiver's alleged wrongdoing occurred over the course of the receivership, after Pence had been removed as an officer of OCMC and unconnected to Pence's activities at OCMC. Although the claims are related in the sense that they are all the consequence of OCMC's collapse and its entry into receivership, this relationship does not convince the Court that the claims arise out of the same transaction or occurrence so as to make them compulsory counterclaims. To the extent Pence's claims are not barred by either the Receivership Order or applicable law, he is not

required to bring them as compulsory counterclaims in the related litigation.

## 2. STATUTE OF LIMITATIONS

The Receiver claims that various causes of action in Pence's complaint are barred by applicable statutes of limitations. *See, e.g.*, Dkt. No. 239 at 14. However, because Pence's claims fail for the reasons discussed below, the Court finds it unnecessary to address any statute of limitations issues.

## B. ALLEGATIONS IN THE PROPOSED COMPLAINT

### 1. WRONGFUL RECEIVERSHIP

Pence alleges that PNC Bank and the Receiver acted wrongfully to secure the Receiver's appointment. Proposed Complaint at ¶¶ 82–89. However, most of these allegations focus on the actions of PNC Bank rather than the Receiver and do not allege any independent wrongdoing on the Receiver's part regarding procurement of the receivership. Additionally, parties that do not object to the appointment of a receiver at the time the appointment is made may be estopped from later raising claims of wrongful receivership. *See Hazifotis v. Citizens Fed. Savings & Loan Ass'n*, 537 N.E.2d 35, 37 (Ind. Ct. App. 1989) ("An objection to the appointment of a receiver must be raised at the time such appointment is made.").

OCMC, through counsel, was present at the hearing for appointment of a receiver and made no objection to such appointment. Dkt. No. 73 at 2–3. Pence contends that he "did not know that Meridian's conduct caused OCMC to be out of compliance with the loan

requirements" at the time the Receivership Order was entered. Dkt. No. 239 at 15. However, as an officer of OCMC, Pence was given ample notice and opportunity to respond prior to appointment of the Receiver. He had an opportunity to object to the appointment or to make his concerns known and request more time to investigate whether appointment of a receiver was appropriate. Pence failed to do so, and he now is estopped from pursuing a wrongful receivership claim against the Receiver.

## 2. INDIANA CRIME VICTIM'S RELIEF ACT

Pence asserts in the Proposed Complaint that he is entitled to a treble damages award under the Indiana Crime Victim's Relief Act ("ICVRA"), Ind. Code. § 34-24-3-1 (2010), based on the Receiver's violation of Indiana's deception statute, Ind. Code. § 35-43-5-3(a)(2) (2010). In support, Pence alleges that the Receiver engaged in conduct intended to gain control and dispose of OCMC's property for the benefit of PNC Bank and at the expense of the rights of all other creditors' rights, including his own. Pence further alleges that the Receiver made false or misleading statements regarding OCMC's compliance with its loan obligations to PNC Bank. Proposed Complaint at ¶¶ 91–95.

ICVRA provides for a treble damages action for "a person [who] suffers a pecuniary loss as a result of a violation of [Indiana Code § 35-43-5-3(a)]." Ind. Code. § 34-24-3-1 (2010). A criminal conviction for deception is not necessary to maintain an action for associated ICVRA civil penalties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 851 (S.D. Ind. 2005) (Tinder, J.). Indiana's deception statute, a violation of which serves as the basis for Pence's IVCRA claim, prohibits a person from "knowingly or intentionally mak[ing] a false or misleading written statement with intent to obtain

property, employment, or an educational opportunity[.]" Ind. Code § 35-43-5-3(a)(2) (2010).

The Court concludes that Pence's ICVRA claim merely seeks to impose alternative liability for a wrongful receivership. This is an entirely unprecedented use of ICVRA and not one that the Court is inclined to allow. Pence had his chance to challenge the receivership at the time of its entry and failed to do so. He may not relitigate the issue now, either as wrongful receivership or under ICVRA.

### 3. BREACH OF FIDUCIARY DUTIES

Pence alleges that the Receiver breached its fiduciary duties in a number of different ways, including engaging in frivolous litigation, failing to protect OCMC's assets, failing to investigate accounting errors, and failing to adequately supervise the administration of the receivership estate. Proposed Complaint at ¶¶ 97–110. A receiver owes fiduciary duties to the creditors that the receivership is set up to protect. *Shipley*, 846 N.E.2d at 295. "A receiver may not subordinate the interest of one creditor in favor of those of another creditor." *KeyBank Nat'l Ass'n v. Michael*, 737 N.E.2d 834, 850 (Ind. Ct. App. 2000). In carrying out its duties, "a receiver is obligated to act in the interests of the creditors and to protect their interests." *Shipley*, 846 N.E.2d at 295 (citing *ISP.com LLC v. Theising*, 805 N.E.2d 767, 772, 775 (Ind. 2004)). This duty includes protecting the receivership property such that the claims of creditors may be paid out of it. *See id.* at 295–96.

Pence alleges in his Proposed Complaint that he is a creditor of OCMC, and therefore the Receiver owes a fiduciary duty to him. Proposed Complaint at ¶ 94. However, the language of the Receivership Order appears to give fiduciary duties to the Receiver only on behalf of the creditors it protects, PNC Bank and CID. Receivership

11

Order at ¶¶ 6, 9.  Additionally, the Receiver has a fiduciary duty to OCMC to protect the receivership property, although this duty is intimately connected to the fiduciary duty owed to the creditors.  To bring a breach of fiduciary duty claim, Pence must plead facts sufficient for a determination that the Receiver owed him a fiduciary duty.  The Court concludes that the Receiver's fiduciary duty to Pence, if any, arises from Pence's status as a shareholder. As such, Pence's claim for breach of fiduciary duty is effectively a shareholder derivative claim, which must be brought in compliance with the Indiana Business Corporation Law ("IBCL").  *See* Ind. Code §§ 23-1-32-1 et seq.  Pence has not complied with the requirements for shareholder derivative suits as set forth in the IBCL.  Therefore, Pence will not be granted leave to assert this claim.

### 4.  NEGLIGENCE/GROSS NEGLIGENCE

Pence alleges that the Receiver violated the duty of due care in conducting receivership activities and that this violation amounts to gross negligence.  Proposed Complaint at ¶¶ 113–17.  Under Indiana law, a receiver may be held liable for negligence. *Shipley*, 846 N.E.2d at 295.  However, the Receivership Order further limits negligence suits in this case.  It clearly states that the Receiver will not be liable for mere negligence but will be liable for actions taken "as a result of malfeasance, bad faith, gross negligence, or reckless disregard of their duties."  Receivership Order at ¶ 21.  In addition, the Receivership Order applies to Pence by its terms.  Receivership Order at ¶ 28 (applying the Order to "all directors, equity owners, creditors, and other persons").  Therefore, Pence's complaint against the Receiver cannot proceed insofar as it relies on a theory of simple negligence.

12

As to the claim of gross negligence, Pence has failed to present a prima facie case that a duty is owed directly to him. Pence asserts that a duty of due care is due to him by virtue of his status as a creditor. Proposed Complaint at ¶ 113. To make out a claim of gross negligence, Pence must show that the Receiver owed him a duty, the Receiver breached its duty, and that the Receiver's breach of duty proximately caused Pence's injuries. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 294 (7th Cir. 1996). The duties inherent in a receivership flow from the receiver to the parties. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). Here, Pence is not a party to the receivership. He is no longer a representative of OCMC except in his capacity as a shareholder, and the duty of care owed by a receiver to creditors must take priority over any duty owed an individual shareholder of a company in receivership. *Cf. Shipley*, 846 N.E.2d at 295. Indeed, a priority duty to individual shareholders would be contrary to a receiver's duty to creditors as discussed previously. In this case, the Receiver's duties are owed, by the terms of the Receivership Order, to PNC Bank and CID, and there is no indication that anyone else, including Pence, has a comparable creditor relationship such that the Receiver would owe him a priority interest. Because Pence has not pled facts sufficient for this Court to conclude that the Receiver owes a duty of due care to him specifically, Pence's claim for gross negligence may not go forward.

## 5.  DEFAMATION *PER SE*

Pence alleges that the Receiver made defamatory statements about him to a number of people, including representatives from Blue Frog and other persons within his profession, accusing him (along with some of the other Interested Parties) of stealing $40

million from OCMC. Proposed Complaint at ¶¶ 119–23. To establish a claim of defamation, a plaintiff must prove a defamatory statement, malice, publication, and damages. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). Defamation *per se* "arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of . . . criminal conduct . . . [or] misconduct in a person's trade, profession, office, or occupation." *Id.* Under this standard, Pence has pled sufficient facts to establish a prima facie case for defamation *per se*.

The Receiver contends that even if the statements were of a defamatory nature, liability is precluded by a qualified privilege. Dkt. No. 231 at 18–21. However, a "qualified privilege operates not to change the actionable quality of the words published, but merely to rebut the inference of malice that is otherwise imputed." *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009). Therefore, a qualified privilege could be asserted as a defense to Pence's complaint, but it does not preclude Pence's bringing the claim as an initial matter.

In the alternative, the Receiver also seeks to claim an absolute litigation privilege for communications made to Blue Frog representatives and others while the Receiver pursued claims on behalf of OCMC. Dkt. No. 231 at 20–21. As recognized by the Supreme Court, "the common-law privilege, traditionally understood, applied to attorneys, witnesses, judges, and other participants in judicial proceedings." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (citing *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976)). The scope of the privilege is determined by reference to state law. *Id.* Indiana courts have

protected statements made in pleadings and other court filings as falling within the absolute litigation privilege. *See Am. Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 98 (Ind. Ct. App. 2000). Publication is protected for statements made in the course of judicial proceedings that are "pertinent and relevant to the case." *Briggs v. Clinton Cty. Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983).

In a case out of the Northern District of Indiana, the court concluded that Indiana's limitations on the absolute litigation privilege mirror those included in the RESTATEMENT SECOND OF TORTS. *See Med. Informatics Eng'g, Inc. v. Orthopaedics Ne., P.C.*, 458 F. Supp. 2d 716, 723 (N.D. Ind. 2006) (noting that, although Indiana courts have not explicitly adopted the Restatement, they cite to the Restatement in defining the scope of the absolute privilege). The Restatement allows parties in private litigation to "publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." RESTATEMENT (SECOND) OF TORTS § 587 (2010). The protection of the absolute privilege is lost only when the defamatory statements are "entirely disconnected with the litigation." *Id.* at cmt. c. Statements to representatives of Blue Frog have some relation to the proceeding at issue because all the litigation concerns the business and liabilities of OCMC, and the statements were made during the Blue Frog proceeding. Therefore, the Court concludes that the communications regarding the alleged theft of $40 million from OCMC are protected by the absolute litigation privilege. Pence may not base a cause of action for defamation *per se* on these privileged communications.

## 6. VICARIOUS LIABILITY FOR MISCONDUCT OF RECEIVER'S AGENTS

Pence contends that, in addition to liability for its own misconduct, the Receiver should also be held liable for the misconduct of its agents.  Proposed Complaint at ¶¶ 124–36.  In particular, Pence points to actions taken by Erin Ray in connection with Pence's personal email accounts, removal and concealment of documents, and defamatory statements made by the Receiver's agents.  *Id.* at ¶ 131.

The Receiver argues that Pence's vicarious liability claim should not be able to proceed because misconduct in discovery cannot form the basis for a tort claim.  Dkt. No. 231 at 7–8, 21.  In particular, the Receiver notes that much of the discovery misconduct was covered in this Court's proceeding for discovery sanctions in related litigation.  Order on Defendant's Motion to Dismiss and for Sanctions, *Meridian Financial Advisors Ltd. v. Pence*, No. 07-cv-995, 2010 WL 2772840 (S.D. Ind. July 12, 2010) (McKinney, J.).  It is true that violations of procedural rules of conduct alone cannot form the basis for a tort cause of action.  *See, e.g., Rogers v. Furlow*, 729 F. Supp. 657, 659 (D. Minn. 1989) (violation of Federal Rules of Civil Procedure does not give rise to an independent cause of action); Ind. Rules of Prof'l Conduct Scope ¶ 20 (violation of Rules of Professional Conduct does not give rise to a cause of action).  The Court agrees with the Receiver that Pence's challenge amounts to an attempt to exact further remedies from the Receiver for its discovery violations.  The Receiver already has been sanctioned for abuses in discovery by an Order allowing, among other remedies, the payment of Pence's attorneys' fees.  *See* Order on Defendant's Motion to Dismiss and for Sanctions, *Meridian Financial Advisors Ltd. v. Pence*, No. 07-CV-995, 2010 WL 2772840, *12 (S.D. Ind. July 12, 2010) (McKinney, J.). The Court concludes that the sanctions in the related litigation adequately compensate

Pence for the misconduct of the Receiver's agents and declines to grant leave for independent claims to be filed in this regard.

## 7.  NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Pence alleges that the Receiver violated its duty to exercise reasonable care in the hiring, supervision, and retention of agents[4] to assist in carrying out various receivership duties.  Proposed Complaint at ¶¶ 138–44.  To maintain a cause of action for negligent hiring, supervision, or retention, a plaintiff must show that the defendant employer negligently retained an employee who the defendant knew was in the habit of misconducting himself.  *Fields v. Cummins Emps. Fed. Credit Union*, 540 N.E.2d 631, 636 (Ind. Ct. App. 1989).  As with the gross negligence claim discussed previously, a negligent hiring, supervision, or retention claim implies that some sort of duty of due care is owed to Pence in the first place.  The Court already has concluded that Pence has not pled facts sufficient for a conclusion that the Receiver owes him a duty of due care.  Pence's negligent hiring claim fails for similar reasons.  Regardless of the Receiver's actions in hiring, supervision, or retention of its agents, Pence has not pled facts sufficient for the Court to conclude that the Receiver owed any duty to Pence to engage in these activities non-negligently.  Since Pence has not shown any duty owed to him, his claims for negligent hiring, supervision, and retention may not be brought.

---

[4]  In related actions, the Receiver has contended that Ray and others were independent contractors rather than employees.  *See* Order on Defendant's Motion to Dismiss and for Sanctions, *Meridian Financial Advisors Ltd. v. Pence*, No. 07-CV-995, 2010 WL 2772840, *6 (S.D. Ind. July 12, 2010) (McKinney, J.).  However, acting under the direction of the Receiver would make these persons the Receiver's agents in either case, and the analysis is the same.

## 8. ABUSE OF PROCESS

Pence alleges that the Receiver committed abuse of process by bringing frivolous claims against Pence and other OCMC employees and officers to divert attention away from PNC Bank and the Receiver's own misconduct and exert economic pressure on Pence. Proposed Complaint at ¶¶ 146–150. Abuse of process requires a finding of misuse or misapplication of the legal process to accomplish a goal that the legal process was not designed to accomplish. *Archem, Inc. v. Simo*, 549 N.E.2d 1054, 1061–62 (Ind. Ct. App. 1990). A party asserting abuse of process must show both an ulterior motive and use of process that would not be proper in the normal prosecution of the case. *Cent. Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986). "A regular and legitimate use of process, though with an ulterior motive or bad intention[,] is not a malicious abuse of process." *Brown v. Robertson*, 92 N.E.2d 856, 858 (Ind. Ct. App. 1950).

In this case, Pence has not pled facts indicating that the Receiver's actions involve a use of process that would not be proper in the normal prosecution of this type of litgation. Pence has sufficiently pled facts for bad intent on the Receiver's part, but bad intent alone is insufficient. In the normal prosecution of a case involving a receiver seeking to protect the rights of creditors, one would expect the Receiver to bring suits against employees and officers believed to have engaged in misconduct. Additionally, although Pence takes issue with the Receiver's referrals of various officers for possible criminal prosecution, it is perfectly reasonable for a receiver to communicate with law enforcement when it believes that the rights of creditors are in jeopardy due to officers' criminal activities. Although the Receiver may have engaged in some of its litigation conduct with ulterior motives, Pence has not pled facts suggesting that the Receiver's use of process was so improper as to

amount to abuse of process.

## 9.  TORTIOUS INTERFERENCE WITH CONTRACT

Pence alleges that the Receiver tortiously interfered with his employment and equity ownership contracts with OCMC by obtaining a receivership to avoid the existing contractual obligations and the potential bonuses due to him if the sale of OCMC had been completed.  Proposed Complaint at ¶¶ 152–156.  However, in the Receivership Order, this Court ordered the Receiver to terminate any remaining employment relationships. Receivership Order at ¶ 15.  In addition, the Receivership Order specifically grants that the Receiver "shall have no personal liability for any liabilities arising from any such termination." *Id.*  Because the Receiver was required to terminate all employment contracts by Court order, Pence may not attempt to hold the Receiver liable in tort for that action.  In addition, the Receivership Order gave the Receiver broad powers to determine how and when to liquidate OCMC, so claims that Pence was denied compensation for any equity interest he possessed are also precluded.  *See* Receivership Order at ¶ 11.  The Receiver was clearly acting within the authority granted to it by this Court, and no liability will attach. *See* 75 C.J.S. *Receivers* § 192 (2002).

## IV.  CONCLUSION

For the foregoing reasons, Interested Parties' Motion for Leave (Dkt. No. 215) is

**DENIED**.  Claims of Interested Parties Benge, Rohn, Treash, Cohen, and Zimmerman are

**DENIED AS MOOT** by virtue of their settlement agreements with the Receiver.  Pence's

Motion for Leave is **DENIED**.

IT IS SO ORDERED this 20th day of September 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached

Distribution to:

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com

Gerald E. Burns
BUCHANAN INGERSOLL
& ROONEY P.C.
gerald.burns@bipc.com

Kathleen A. Gallagher
ECKERT SEAMANS CHERIN &
MELLOTT LLC
kgallagher@eckertseamans.com

Sandy B. Garfinkel
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
sgarfinkel@eckertseamans.com

Charles C. Lemley
WILEY REIN LLP
clemley@wileyrein.com

William L. O'Connor
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
woconnor@beneschlaw.com

William H. Schorling
BUCHANAN INGERSOLL
& ROONEY PC
william.schorling@bipc.com

Stephen S. Stallings
STALLINGS LLC
sstallings@stallings-law.com

Jana K. Strain
GEIGER CONRAD & HEAD, LLP
jana.strain@gch-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com

Ann Marie Waldron
awaldron@rwylaw.com